UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN MYERS, et al.,

                            Plaintiffs,

        v.                                                     **DECISION AND ORDER**
                                                               13-CV-342S

BOARD OF EDUCATION OF THE BATAVIA
CITY SCHOOL DISTRICT,

                            Defendant.

## I. INTRODUCTION

Plaintiffs commenced this action on April 5, 2013 against the Batavia City School District, seeking injunctive and equitable relief for alleged sexual discrimination in violation of Title IX and the Fourteenth Amendment, on behalf of themselves and all parties similarly situated. (Docket No. 1, Complaint.) On May 2, 2014, this Court granted a joint motion, allowing the parties to dispense with the notice and fairness-hearing requirements of the Federal Rule of Civil Procedure 23(e)(1)-(2) (Docket No. 23), and, on May 30, 2014, this Court approved a consent decree presented by the parties (Docket No. 26). Currently pending before this Court is Plaintiffs' motion for fees. For the following reasons, the motion for fees is granted.

## II. BACKGROUND

The named plaintiffs are female softball-playing students in the Batavia City School District. (Compl. ¶¶ 6-8.) They filed suit seeking declaratory and injunctive relief, alleging that the Batavia City School District discriminated against female student softball players "by providing superior facilities and equipment to the boys' baseball program than it provides to the girls' softball program" at Batavia High School. (Id. at ¶

1.)  They sought no monetary damages.

Plaintiffs cited as the "most glaring example of the District's disparate treatment" the difference between the facilities provided to the boys' baseball team and the girls' softball team.  Specifically, the varsity boys' baseball team at Batavia High School "play all home games at a professional minor league baseball stadium," and the varsity girls' softball team played in "a field that is poorly maintained, hazardous, lacks outfield fencing, and has no scoreboard, dugouts or stands." (<u>Id.</u>)  The Complaint alleged that the junior varsity boys' baseball field was superior in numerous ways to the varsity girls' softball field, and better maintained by the Batavia City School District.  (<u>Id.</u> ¶¶ 58-61.) The Complaint further alleges that the girls' softball team was not given access to bathrooms and locker rooms (while the boys were), that the lack of lights on the girls' field limited scheduling of games, that the girls received inequitable equipment and funding, and that the District has been aware of its failure to comply with Title IX since at least February of 2011.  (<u>Id.</u> at ¶¶ 68-80.)

Plaintiffs requested "improvement of [the girls' softball team's] substandard facilities." (<u>Id.</u> ¶ 1)  Their prayer for relief specifically sought "preliminary and permanent injunctive relief requiring the Defendant to remediate its violations of federal law prohibiting sex discrimination by, among other required actions, providing female student athletes with treatment and benefits comparable to those provided to male athletes." (Compl. at p. 17-18.)  The Complaint also sought attorneys' fees.  (<u>Id.</u>)

As represented by Defendant's counsel in his Affirmation in Support of the Joint Motion for Approval of Proposed Consent Decree (<u>see</u> Docket No. 24-1, the "Affirmation" or "Aff."), after initiation of the suit, the parties engaged in arm's length

discussions about the legal and factual elements at issue, including two rounds of "comprehensive written proposals and counterproposals," and a meeting with a mediator.  (Aff. at ¶¶ 7-8.)  During this period, both parties continued their litigation efforts, and Plaintiffs prepared and served "extensive discovery demands in anticipation of a potential breakdown in settlement discussion."  (Id.)  Through the assistance of the mediator, the parties reached a settlement in principle in late November, 2013, though they "continued to negotiate the terms and details of the ultimate Consent Decree . . . until early April 2014."  (Id. at ¶ 9.)  The terms of the consent decree

> reflect acknowledgement of, or provisions for, District action with respect to all of these program levels, including but not limited to:  (1) agreement to a series of field modifications and installment of additional features at the girls' varsity softball field . . . ; (2) the addition of field material (i.e., ballmix) at the District's junior varsity facility and installation of a new safety feature (fence cap) at that facility; and (3) acknowledgement of the District's "skinning" (i.e., conversion of the infield to an all-dirt composition) of its primary girls' modified softball field in September 2013.

(Id. at ¶ 10.)  And, as affirmed by Defendant's counsel, "[e]very significant area of grievance offered by the Plaintiffs' Complaint, moreover, is either provided for by the Consent Decree's terms, or has otherwise been resolved through a course of discussion and negotiation in arriving at the Consent Decree."  (Id. at ¶ 17.)

In the decision approving the proposed consent decree, this Court found "that consent decree's terms, reached as a result of "good faith, arms-length bargaining between experienced counsel" are "fair and adequate and are not unlawful, unreasonable, or against public policy."  (See Docket No. 26 at ¶ 2 (quoting United States v. Ashland, Inc. , No. 04-CV-904S, 2008 WL 2074079, at *1 (W.D.N.Y. May 14, 2008))).   The Court approved the proposed consent decree, in part, "because it addresse[d] nearly all the concerns raised in Plaintiffs' complaint."  (Id. at ¶ 3.)

Plaintiffs now move for $65,906.80 in attorneys' fees and $2,638.40 in cost reimbursement, for a total of $68,545.20.[1]   (Docket No. 29.)   Defendant opposes the motion, arguing that the fees should be denied or reduced.

### III. DISCUSSION

Plaintiffs move for fees pursuant to 42 U.S.C. § 1988(b), which states, in relevant part:   "In any action or proceeding to enforce a provision of [Title IX] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."   A district court has discretion to determine the amount of fees that would be appropriate to satisfy a fee award.   Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983); see also Fed. R. Civ. P. 54(d).

### A.   Calculation of Reasonable Fees and Costs

Both the Second Circuit and the Supreme Court have held that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"   Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany ("Arbor Hill"), 522 F.3d 182, 183 (2d Cir. 2008)).   The application of the lodestar method in this Circuit also requires a district court, "in exercising its considerable discretion, to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified[2] as relevant to the

---

[1] Plaintiffs initially sought $63,181.50 in attorneys' fees and $2,638.40 in cost reimbursement, totaling $65,819.90.  In their reply, filed on November 6, 2015, Plaintiffs subtracted $2,650.00 in attorneys' fees billed by a law student, and added the $5,375.30 spent preparing the reply memorandum, resulting in a revised total of $68,545.20 for fees and costs.  (See Docket No. 34-1.)

[2] The most-cited variables are the so-called Johnson factors, including:  "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained;

reasonableness of attorney's fees in setting a reasonable hourly rate." <u>Arbor Hill</u>, 522 F.3d at 190 (emphasis removed); <u>see</u> <u>Barfield v. N.Y.C. Health and Hosp. Corp.</u>, 537 F.3d 132, 151-52 (2d Cir. 2008).  Ultimately, "the presumptively reasonable fee is what a reasonable paying client would be willing to pay, giving that a client wishes to spend the minimum necessary to litigate the case effectively." <u>Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC</u>, 688 F. Supp. 2d 216, 223 (W.D.N.Y. 2010) (internal quotation marks omitted); <u>see</u> <u>Arbor Hill</u>, 522 F.3d at 184.

The fee-seeking party bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." <u>See</u> <u>Savoie v. Merchants Bank</u>, 166 F.3d 456, 463 (2d Cir. 1999) (quoting <u>Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers</u>, 34 F.3d 1148, 1160 (2d Cir. 1994)).  "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>Kirsch v. Fleet St., Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998).

Plaintiffs seek $65,906.80 in attorneys' fees.  This represents 297 hours of work expended by three attorneys over the course of more than three years.[3]  Plaintiffs' counsel submitted documentation of legal work, including sufficiently detailed time records for each attorney and an explanation on the hourly rates sought for each attorney.  (<u>See</u> Docket Nos. 29.2, 29-3).

---

(9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Arbor Hill</u>, 522 F.3d at 187 n. 3 (citing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)).

[3] These numbers reflect billing judgment already applied by Plaintiffs.  The actual number of hours spent was 364.9, and the actual number of attorneys on the team was four (plus a second year law student).

1. <u>Hourly Rate</u>

The three attorneys' hourly fees range from $185 (for Kristin Small, an associate with seven years' experience) to $305 (for Jonathan Feldman and Peter Dellinger, senior counsel with 25-30 years' experience).  Generally, the reasonable hourly rate is the hourly rate employed by attorneys in the district in which the litigation is brought. <u>Simmons v. N.Y.C. Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009).  Defendant argues that Ms. Small's hourly rate should be reduced to $150, and that Mr. Feldman and Mr. Dellinger's hourly rates should be reduced to $240-$250.

Although Defendant points to certain case law where lower rates were found to be appropriate, Defendant failed to distinguish a recent case in which this Court approved hourly rates identical to those sought here.  <u>See</u> <u>S.M. v. Evans-Brant Cent. Sch. Dist.</u>, No. 09-CV-686S, 2013 WL 3947105, at *14 (W.D.N.Y. July 31, 2013) (finding hourly rates of $305 for experienced attorneys and $185 for less-experienced counsel "reasonable, equitable, and proper" based on "consideration of the relevant <u>Johnson</u> factors and the submissions made by" the attorneys).  Based on its review of the <u>Johnson</u> factors, submissions made by the attorneys and the relevant law, this Court finds the rates sought by Plaintiffs to be "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Reiter v. MTA New York City Transit Authority</u>, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted); <u>see also</u> <u>Brown v. Mustang Sally's Spirits & Grill, Inc.</u>, No. 12-CV-529S, 2013 WL 5295655, at *4 (W.D.N.Y. Sept. 18, 2013) ($300 hourly rate appropriate for an attorney of 20 or more years of experience).  Indeed, at least one Court in this District has found significantly higher rates to be appropriate.

See Davis v. Eastman Kodak Co., 758 F. Supp. 2d 190 (W.D.N.Y. 2010) (approving $450 hourly rate for attorneys with 20 years or more experience; $350 hourly rate for attorneys with 11-20 years' experience; $300 hourly rate for 6-10 years' experience; and $250 hourly rate for 0-5 years' experience.)

Accordingly, Ms. Small's hourly rate will be $185, and Mr. Feldman and Mr. Dellinger's hourly rates will be $305.

    2.  Hours Expended

Defendant makes several categorical objections to the hours billed, arguing that they are unreasonable and duplicative.  For example, Defendant points to the fact that two attorneys attended depositions, citing Grievson v. Rochester Psychiatric Ctr., 746 F. Supp. 2d 454, 467-68 (W.D.N.Y. 2010).  (Def.'s Opp. at p. 14).  Grievson is distinguishable, because the Court reduced hours where the reason for multiple attorneys attending depositions was to train a junior litigator.  746 F. Supp. 2d at 467. Defendant does not contend that training was the reason that Plaintiffs brought two attorneys to depositions and, indeed, Plaintiffs note that Defendant also had two attorneys attend each deposition.  This suggests that the depositions were not routine, and that the attendance of two attorneys was reasonable in this matter.

Defendant also objects to several specific entries, arguing that they reflect excessive billing.  After careful review of the attorneys' time sheets, however, this Court is satisfied that these hours are reasonable.  Moreover, Plaintiffs have already reduced the hours for which they seek compensation by a combined total of 67.9 hours, including 8.4 hours by senior attorney Bryan Hetherington, who has 40 years of litigation experience and bills at $350 per hour.  Plaintiffs' own reductions equal a more than 18%

cut of hours, and this Court finds such a "reduction is sufficient to account for any potentially duplicative or unnecessary efforts that might have been undertaken by plaintiff's counsel, and therefore conclude that the amount of attorney's fees requested . . . is appropriate.  See Halecki v. Empire Portfolios, Inc., 952 F. Supp. 2d 519, 522 (W.D.N.Y. 2013).

### 3. Total Fee Award

Having found the hourly rates and hours expended to be reasonable, the lodestar calculation is $65,906.80.

## B.    Reduction to the Lodestar

Defendant contends that the attorneys' fees should be denied or reduced across the board because Plaintiffs received limited success and because Defendant is a public entity.

### 1. Plaintiffs' Success

As recognized by the Second Circuit, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff."  Barfield, 537 F.3d at 152 (citations and quotation marks omitted).  Thus, "[a] District Court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee, such as cases where the plaintiff only had a small degree of success."  C.G. v. Ithaca City Sch. Dist., 531 F. App'x 86, 88 (2d Cir. 2013) (internal citations and quotations omitted); see also Barfield, 537 F.3d at 152 (defining "degree of success" as "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint" (internal quotation marks omitted)).  "If

. . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." <u>Hensley</u>, 461 U.S. at 436.

Defendant argues that "Plaintiffs achieved virtually *nothing* in the way of success." (Docket No. 33-4, Mem. in Opp. At 5 (emphasis in original).)   Defendant contends that the upgrading of the softball field "*was not a result of the Plaintiffs' action*" and had long been underway.  (<u>Id.</u> at 6 (emphasis in original).)  This argument would appear to be directly at odds with the Affirmation in Support of the Joint Motion for Approval of Proposed Consent Decree submitted by Defendant's counsel, who affirmed that, "[e]very significant area of grievance offered by the Plaintiffs' Complaint, moreover, is either provided for by the Consent Decree's terms, or has otherwise been resolved through a course of discussion and negotiation in arriving at the Consent Decree."  (Aff. at ¶ 17.)   Further, if Plaintiffs' suit was not the reason for the changes, and such changes had long been underway, Defendant should have settled the suit earlier, thereby avoiding costs for both sides.

This argument suggests that Defendant's counsel was not entirely forthcoming in the Affirmation, or that this suit was a waste of time and money for both sides.  Giving all parties the benefit of the doubt, and relying on the Affirmation made by Defendant's counsel, this Court finds that Plaintiffs achieved nearly all they sought through their Complaint, and there is accordingly no basis to reduce attorneys' fees due to limited success.

2.  <u>Defendant's Status as a Public Entity</u>

At least one Court in this District has cautioned that "the costs to be borne by

taxpayers should weigh heavily in a court's determination of a reasonable fee award . . . ."  Eames v. Shalala, No. 81-CV-0483E, 1994 WL 520972, at *5 (W.D.N.Y. Sept. 22, 1994).  However, this was a general caution, as opposed to the basis for a basis for a reduction of the lodestar in that case.  Id.  Indeed, Defendant does not cite a single case in this Circuit where the status of a public entity and the possible costs to the taxpayer formed the basis for a public entity reduction, nor does this Court find such a reduction to be called for here.

**C.    Costs**

Plaintiffs seek to recover $2,638.40 in costs, which includes the filing fee in federal court, payment for half of the court-appointed mediator, and the cost of an independent appraisal of Defendant's junior varsity softball field.  (Docket No. 29-1 at ¶ 36.)  Defendant does not dispute these amounts.  Accordingly, this request is granted.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for fees is granted in the amount of $2,638.40 as to costs and $65,906.80 as to fees, totaling $68,545.20.

**V. ORDERS**

IT HEREBY IS ORDERED that Plaintiffs' Motion for Fees (Docket No. 29) is GRANTED in the amount of $68,545.20.


SO ORDERED.

Dated: September 4, 2016
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge